UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BOBBY WALKER, PAUL FRAZIER, DAVID FRED MEHAFFEY II, JUAN GARCIA, BRODERICK MCCLOUD, MICHAEL WEATHERSBY, EDGAR SANCHEZ, and JAVIER PINEDA, *et al.*, §§§§§§§ Plaintiffs, §§ VS. §§ HONGHUA AMERICA, LLC, §§ Defendant. § | Civ. Action No. 4:12-cv-00134 |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Conditionally Certify a Collective Action and to Issue Notice ("Motion"). (Doc. No. 10.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED** in part and **DENIED** in part.

### I. FACTS

In January 2012, Bobby Walker ("Walker"), Paul Frazier ("Frazier"), David Fred Mehaffey II ("Mehaffey"), Juan Garcia ("Garcia"), Broderick McCloud ("McCloud"), Michael Weathersby ("Weathersby"), Edgar Sanchez ("Sanchez"), and Javier Pineda ("Pineda") (collectively, "Plaintiffs") filed this lawsuit against HongHua America, LLC ("HongHua" or "Defendant"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). (Doc. No. 1, Pl.'s Compl. ¶ 1.) Defendant, an American subsidiary of a Chinese company, designs and manufactures land rigs and offshore drilling modules. (*Id.* ¶ 18.) Walker, Frazier, Mehaffey, and Garcia were employed by Defendant

1

as Crane Operators. (*Id.* ¶¶ 6-7.) McCloud, Weathersby, Sanchez, and Pineda worked for Defendant as Roughneck/Riggers. (*Id.* ¶¶ 10-13.)

Plaintiffs claim that Defendant systematically labeled many of its employees "independent contractors" so that it could avoid paying them overtime as required by the FLSA, 29 U.S.C. § 207(a)(1). (*Id.* ¶ 1.) Although there are exemptions to § 207(a)(1)'s requirements, Plaintiffs insist that none of these exemptions applied to them. (*Id.* ¶ 47.) Consistent with its policy, Defendant allegedly misclassified Plaintiffs as independent contractors and paid them "straight-time overtime" when they worked over 40 hours in a workweek, rather than the time and one-half specified in the FLSA. (*Id.* ¶ 2.) According to Plaintiffs, Defendant fired Walker and Frazier when they complained about not being paid time and one-half. (*Id.* ¶ 3.) Plaintiffs aver that Defendant's violations of the FLSA were blatant and willful. (*Id.* ¶ 41.) Consequently, Plaintiffs seek to recover unpaid overtime wages due to them and their similarly situated former coworkers. (*Id.* ¶ 5.) Additionally, Walker and Frazier bring suit for retaliatory termination in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).[1] (*Id.*) In their Complaint, Plaintiffs explain that they seek to represent a class under 29 U.S.C. § 216(b)[2] on behalf of: "All current and

---

[1] Section 215(a)(3), 29 U.S.C. provides that "it shall be unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding…"

[2] Section 216(b), 29 U.S.C. explains that an employer who violates § 207 of the FLSA is liable to employees, who may bring the action on behalf of themselves and those similarly situated:

> An employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…. An action to recover the liability prescribed … may be maintained against any employer … in any federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought….

former Crane Operators and Roughneck/Riggers who were employed by HongHua during the three-year period preceding the filing of this complaint." (*Id.* ¶ 72.)

Plaintiffs filed this Motion, seeking to conditionally certify their proposed class. (Doc. No. 10.) Defendant filed a Response (Doc. No. 20) and a Sur-Reply (Doc. No. 24). Plaintiffs filed a Reply (Doc. No. 22).

**II. LAW**

Under § 207(a) of the FLSA, covered employers are required to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. Section 216(b) provides a right of action for employees against employers who violate § 207. Similarly situated employees can "opt-in" to a lawsuit under § 207(a) to benefit from a judgment. *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 105 (D. Conn. 2007). Courts recognize two methods for determining whether to authorize notice to similarly-situated employees: the spurious class action *Shushan* approach, or the two-step *Lusardi* approach. *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, at *14 (S.D. Tex. April 11, 2006) (citing *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). The Fifth Circuit has not determined which method is more appropriate, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), but most courts use the *Lusardi* approach, including this one, *Aguirre*, 2006 U.S. Dist. LEXIS 22211, at *14. *See also Detho v. Asia Bilal*, No. H-07-2160, 2008 U.S. Dist. LEXIS 29502, at *5 (S.D. Tex. April 10, 2008); *Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) ("Since *Mooney* district courts in the Fifth Circuit

3

have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA.").

Under the first step of the *Lusardi* analysis, courts decide whether to issue notice to potential class members. *Aguirre*, 2006 U.S. Dist. LEXIS 22211, at *14. As the court's decision is usually based only on the pleadings and affidavits, the standard is lenient and typically results in conditional certification. *Id.* at *14-15. Indeed, as discovery usually has not been conducted at this stage, courts do not review the underlying merits of the action in determining whether to conditionally certify. *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 2010 U.S. Dist. LEXIS 12620, at *28 (D. Ariz. 2010). "Some courts place an emphasis on finding 'some identifiable facts or legal nexus [that] binds the claims so that hearing the cases together promotes judicial efficiency.'" *Aguirre*, 2006 U.S. Dist. LEXIS 22211, at *15 (quoting *Barron v. Henry County Sch. Sys.*, 242 F.Supp.2d 1096, 1103 (M.D. Ala. 2003)). "'A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005)). Specifically, "[t]he first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Id.* at *19; *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *6 (S.D. Tex. Nov. 17, 2008) (quoting *Maynor v. Dow Chem. Co.*, No. G-07-504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008)). "Some factual support for the complaint allegations of class-wide policy or practice must be shown to authorize

notice." *Maynor*, 2008 WL 2220394, at *6. Notably, "[c]ollective actions under the FLSA are generally favored because such allegations reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding [all] 'common issues of law and fact arising from the same alleged … activity.'" *Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 823 (N.D. Tex. 2007) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

Once a court conditionally certifies a class, the action proceeds as a collective action during discovery. *Aguirre*, 2006 U.S. Dist. LEXIS 22211, at *16 (citing *Mooney*, 54 F.3d at 1214). At the second stage of the analysis, the defendant moves to "decertify" the conditionally-certified class. *Id.* (citing *Mooney*, 54 F.3d at 1214). The court then must make a factual determination as to whether the employees are similarly situated; if it so finds, the collective action may proceed. *Id.* at *16-17. Alternatively, if the court finds that the employees are not similarly situated, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed with their individual claims. *Id.* at *17 (citing *Mooney*, 54 F.3d at 1214).

### III. ANALYSIS

Utilizing the *Lusardi* analysis, the Court concludes that conditional certification is warranted. However, the Court finds that it is appropriate for the case to proceed with two classes: one class consisting of Crane Operators, and a second class consisting of Roughneck/Riggers. Also, although Plaintiffs may issue notice to workers beginning three years prior to the date of this Memorandum and Order, the end date must be set as January 12, 2012, when Defendants refashioned their overtime policy by hiring individuals from a third-party staffing company.

### A. Parties' Briefing

In the Motion, Plaintiffs request that the Court conditionally certify a collective action and authorize Plaintiffs to issue "opt-in" notices to similarly situated Crane Operators and Roughneck/Riggers who have performed work for Defendant over the past three years without receiving overtime pay. (Doc. No. 10, Mot. Certify at 2.) Plaintiffs contend that conditional certification is proper because the Plaintiffs and their fellow Crane Operators and Roughneck/Riggers:

- All worked at the same location in Houston, Texas;
- All worked in one of two job categories, either as Crane Operators or Roughneck/Riggers, performing the same essential jobs under similar relevant conditions;
- All worked a lot of overtime;
- All were misclassified as "independent contractors" and thus were not paid overtime compensation that they were entitled to receive under the FLSA;

(*Id.* at 3.) Plaintiffs observe that other similarly situated individuals exist because, as explained in multiple affidavits, there are probably more than twenty other Crane Operators and two hundred Roughneck/Riggers who have worked for Defendant in the past three years. (*Id.* at 13.) Additionally, Plaintiffs contend that there is ample proof that other persons want to join the case; indeed, twelve more Plaintiffs have opted into this case since it was filed, bringing the number of total Plaintiffs to twenty. (*Id.* at 3.) Plaintiffs explain that they share, with putative opt-in Plaintiffs, a common work location, job duties,

job conditions, and job titles. (*Id.* at 15.) According to Plaintiffs, these facts render them "a cohesive and homogenous group all subject to the same policy and practice (*i.e.*, deprived of overtime they all worked based on one common alleged exemption) that fit perfectly within the letter and spirit of the FLSA collective action." (*Id.* at 14.)

Defendant disputes that conditional certification is warranted here. According to Defendant, the core issue in this case—contractor versus employee status—is clearly not a question that lends itself to determination as a collective action. (Resp. to Mot. Certify at 2.) Defendant urges that the Plaintiffs were independent contractors pursuant to the economic realities test. (*Id.* at 16.) Additionally, Defendant argues, the Court would have to undergo an independent analysis as to each employee, taking into account their diverse professional histories, experiences, services, skill, initiative, investments in tools and equipment, time periods worked, and sources of income. (*Id.* at 16-20.) In other words, Defendant contends, as these unique patterns would have to be investigated for each worker, a collective action would be ineffective and unwieldy. (*Id.* at 20.) If the Court chooses to conditionally certify, however, Defendant requests that the Court narrow the personal information about workers that could be divulged to Plaintiffs' counsel. (*Id.* at 21.) Defendant also asserts that the Court should treat Crane Operators and Roughneck/Riggers separately. (*Id.* at 23.) Finally, Defendant requests various changes to Plaintiffs' proposed notice. (*Id.* at 23-25.)

In their Reply, Plaintiffs claim that Defendant itself treated the putative Plaintiffs as similarly situated—by making them all employees of Orin Staffing in January 2012, so that they now receive overtime pay under the FLSA. (Reply to Mot. Certify at 4.) Plaintiffs urge that Defendant's merits-based arguments are inappropriate at the conditional

7

certification stage of an FLSA action. (*Id.* at 5.) Additionally, Plaintiffs believe that judicial efficiency in fact favors conditional certification. (*Id.* at 7.) Defendant filed a Sur-Reply in which it insists that Plaintiffs misapply the law concerning conditional certification. (Sur-Reply to Mot. Certify at 3.) Defendant points out that courts have refused to conditionally certify FLSA suits if the individualized inquiries required would eliminate the "economies of scale envisioned by the FLSA collective action procedure"— the exact scenario, Defendant asserts, that is before this Court. (*Id.* at 4.) According to Defendant, its arguments are not merit-based; rather, as "the question of whether or not to conditionally certify a class depends upon whether the named and putative plaintiffs are contractors or employees," Defendant's arguments should be considered at this stage of the proceeding. (*Id.* at 9.) Finally, Defendant emphasizes that the proposed notice is flawed because it is designed to create the perception that (a) the Court has endorsed the merits of the suit, (b) there is money to be had by joining, (c) the recipient will not be able to recover if they do not participate, and (d) all roads to the money go through the office of Plaintiffs' attorney. (*Id.* at 10.)

### B. Reasonable Basis for Crediting Assertions that Aggrieved Individuals Exist

Plaintiffs have met their burden of showing that there is a reasonable basis for assuming that other aggrieved individuals exist. According to affidavits presented by Plaintiffs, as many as twenty Crane Operators (Doc. No. 10-2, Paul Frazier Aff. ¶ 5) and two hundred Roughneck/Riggers (Doc. No. 10-3, Broderick McCloud Aff. ¶ 5; Doc. No. 10-4, Javier Pineda Aff. ¶ 5) have worked for Defendant over the past three years. Indeed, there were as many as five Crane Operators (Frazier Aff. ¶ 3) and seventy Roughneck/Riggers (McCloud Aff. ¶ 3; Pineda Aff. ¶ 3) at any one time. Furthermore,

8

Plaintiffs understood that these other Crane Operators and Roughneck/Riggers were not paid overtime. (Frazier Aff. ¶ 5; McCloud ¶ 5; Pineda ¶ 5.) Together, these affidavits are sufficient to demonstrate a reasonable basis for crediting Plaintiffs' assertion that other aggrieved individuals exist.

### C. Aggrieved Individuals Are Similarly Situated to Plaintiffs in Relevant Respects Given the Claims and Defenses Asserted

Plaintiffs seek to conditionally certify a class consisting of employees from two different positions: that of Crane Operator, and that of Roughneck/Rigger. Plaintiffs present evidence that Crane Operators were responsible for operating cranes. (Frazier Aff. ¶ 2.) Plaintiffs also show that Roughneck/Riggers "all did the same thing at the same location: heavy labor assembling and disassembling rigs for HongHuga at its 35,000 square foot warehouse fabrication show and 20-acre rig-up facility located at 8300 McHard Road, Houston, Texas 77053." (McCloud Aff. ¶ 3; Pineda Aff. ¶ 3.) According to Plaintiffs, the Roughneck/Rigger job "is not skilled work—it is just straight-up hard labor." (McCloud Aff. ¶ 3.) Defendant points out that, in contrast, the Crane Operators have specialized training and experience, and are certified to operate cranes. (Ex. A to Mot. Certify, Estela V. Moscot Aff. ¶ 13.)

"For the class representative to be considered similarly situated to the potential opt in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Ryan*, 497 F.Supp.2d at 825 (citing *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Plaintiffs "need only show that their positions are similar, not identical, to putative plaintiffs." *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246 (W.D. Mich. 2011). *See also England v. New Century Financial Corporation*, 370 F.Supp.2d 504, 507 (M.D.

9

La. 2005) ("Similarly situated does not necessarily mean identically situated." (footnote omitted)). "Slight differences in job duties or functions do not run afoul of the similarly situated requirement." *Tolentino v. C&J Spec-Rent Services, Inc.*, 716 F.Supp.2d 642, 651 (S.D. Tex. 2010). However, "if the job duties among potential members of the class vary *significantly*, then class certification should not be granted." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008) (citing *Harris v. Fee Transp. Servs.*, No. Civ.A.3:05CV0077-P, 2006 WL 1994586, at *5 (N.D. Tex. May 15, 2006) (noting the "significant" differences between the job duties of potential plaintiffs); *Aguirre v. SBC Commc'ns, Inc.*, No. H-05-2198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007) (noting that plaintiffs are not similarly situated if their job duties vary "substantially")); *Johnson*, 2007 WL 5200224, at *9 ("The Court recognizes that there are some differences between plaintiffs' employment experiences as assistant managers. But the terms of the FLSA's collective action provision allow for differences. To pursue claims against an employer, plaintiffs must be *similarly situated.* They do not have to be *identically situated.*" (emphasis in original)).

Examining Plaintiffs' Motion and the attached affidavits, as well as Defendant's briefing, it is clear that the Crane Operators and Roughneck/Riggers performed significantly different job duties. *See, e.g., Dreyer*, 2008 WL 5204149, at *2 ("But, though Dreyer and Stewart valiantly argue that these employees are similar to them because they also respond to user queries regarding computer hardware problems, this similarity is too abstract. The evidence shows that IT workers in the Customer Services Group are principally responsible for providing technical support for users of desktop personal computers, including the software that runs on them. This type of work is fundamentally

different from the more complex server-side work that Dreyer and Stewart performed."). Their tasks, skill level, and prior experience differ in important ways, such that Crane Operators and Roughneck/Riggers could not be similarly situated to one another.[3]

Nor is this a case where the division between the two positions is porous, *Jesiek*, 275 F.R.D. at 247 ("On this record, the distinction between 'installers' and 'technicians' is not set in stone. Field employees move between the two employee categories as needed. The Court is mindful that the burden on Plaintiffs here is lenient. Omitting technicians from the opt-in employee class would potentially exclude individuals who worked as installers for only one or two jobs."), or where the job titles were different, but the actual tasks identical, *Prater v. Commerce Equities Management Co., Inc.*, No. H-07-2349, 2007 WL 4146714, at *6 (S.D. Tex. Nov. 19, 2007) ("The plaintiffs have made the necessary minimal showing that they and other leasing staff employees are similarly situated in terms of job requirements. Although [defendant's] affidavit states that the plaintiffs had different positions and different duties, the plaintiffs assert in their affidavits that they all performed the same duties of a leasing agent and 'all did the same thing which included performing leasing, administrative, and marketing tasks.'"). Indeed, the two positions require "different equipment and a different composition of work crews." *Tolentino*, 716 F.Supp.2d at 651. Thus, despite the fact that all Plaintiffs worked at the same facility, it is

---

[3] In fact, Crane Operators appear to have had a specialty in their field, which merely adds weight to the fact that they were not similarly situated to Roughneck/Riggers. Indeed, any possible category that would encompass both Crane Operators and Roughneck/Riggers would be too generic. *Villareal v. St. Luke's Episcopal Hospital*, 751 F.Supp.2d 902, 919 (S.D. Tex. Nov. 3, 2010) ("Plaintiffs state that all of the employees working in IT Services had 'a common purpose, which is to help the use of computers and computer related equipment, at various departments of St. Luke's, to get the most performance from their computers and to overcome problems or obstacles.' However true this may be, the generic quality of this statement creates a far broader categorization than that permitted under the 'similarly-situated' analysis…. Generally speaking, TSC employees dealt with fixing the computer issues that arose on a daily basis at St. Luke's; the other four groups specialized in the implementation of and maintenance of specific software or hardware issues…. This specialization prevents the court from finding that employees in those groups are similarly situated to those employees who worked in the TSC.").

11

clear that Crane Operators and Roughneck/Riggers were not similarly situated in terms of job requirements. *Morales v. Thang Hung Corp.*, No. 4:08-2795, 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009) ("[Plaintiff's] description of the class includes supermarket management, seafood counter workers, and presumably many other classes of supermarket employees.… [Plaintiff] has not shown that the Supermarket management members are similarly situated to the other employees of the supermarket, and common practice would indicate that they are not.").

The Court does determine, however, that Crane Operators and Roughneck/Riggers are similarly situated within their respective positions. Crane Operators worked at the same facility, operated cranes, and were subject to a policy of not being paid overtime. (Frazier Aff. ¶¶ 2, 3, 5.) Roughneck/Riggers performed heavy labor and disassembled drill rigs for Defendant at the same facility, and were subject to a policy of not being paid overtime. (McCloud Aff. ¶¶ 2, 3, 5; Pineda Aff. ¶¶ 2, 3, 5.) Defendant asserts that these groups are not homogenous. (Moscot Aff. ¶¶ 13-14.) Discovery may show that Crane Operators and Roughneck/Riggers are not similarly situated within their respective groups. Nonetheless, at this preliminary stage, Plaintiffs can survive the similarly situated analysis as to each position.

The Court disagrees with Defendant's conclusion that FLSA cases concerning employee versus independent contractor status are inherently ill-suited to collective action treatment. Contrary to Defendant's assertion, many courts have granted conditional certification in FLSA cases involving disputes over whether workers were misclassified as independent contractors. *See Ruffin v. Entertainment of the Eastern Panhandle*, No. 3:11–CV–19, 2012 WL 761659, at *5 (N.D. W.Va. March 7, 2012); *Lang v. DirecTV, Inc.*, No.

10–1085 "G"(1), 2011 WL 6934607 (E.D. La. Dec. 30, 2011); *Perez v. Comcast*, No. 10 C 1127, 2011 WL 5979769 (N.D. Ill. Nov. 29, 2011); *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011); *Scovil v. FedEx Ground Package System, Inc.*, 811 F.Supp.2d 516 (D. Me. 2011); *Johnson v. ECT Contracting, LLC*, No. 3:09-0130, 2010 WL 625390 (M.D. Tenn. Feb. 18, 2010). Indeed, Defendant's "argument borders on specious—members of the proposed class[es] all hold the same job title, have the same job responsibilities, work at the same locations, and, by extension are subject to the same ownership and management." *In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ 1145(NRB), 2010 WL 4340225, at *4 (S.D.N.Y. Oct. 27, 2010). "If such a group does not merit at least preliminary class treatment, one would expect that class treatment would rarely be granted in FLSA actions, a proposition that is plainly incorrect as an empirical matter." *Id.*

Nonetheless, courts are split as to whether the economic realities test should be utilized when determining whether to conditionally certify an FLSA action concerning an allegedly wrongful independent contractor designation. To determine whether a worker is an employee or an independent contractor, "courts in this Circuit 'generally use as a guide five, non-exclusive factors: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer.'" *Andel v. Patterson-UTI Drilling Co., LLC*, No. V–10–36, 2012 WL 531167, at *2 (S.D. Tex. Feb. 15, 2012) (quoting *Tibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 846 (5th Cir. 2010)). Some courts have

undergone the independent contractor versus employee analysis, called the economic realities test, in determining whether to issue conditional FLSA certification. *Id.; Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 WL 645905, at *7 (E.D. Pa. Feb. 29, 2012) ("In independent contractor mis-classification cases such as the case before us, district courts are divided as to what type of evidence is relevant in considering whether the named and potential plaintiffs are similarly situated. Some courts view the evidence of similarity in light of all of the factors used to determine whether an individual is an 'employee' under the FLSA. In a second, different approach, other courts simply consider whether the plaintiffs have presented evidence of general similarities across the proposed class…. Lastly, there are courts who borrow from each of these approaches…." (footnotes omitted)); *Demauro v. Limo, Inc.*, No. 8:10-cv-413-T-33AEP, 2011 WL 9191, at *3-4 (M.D. Fla. Jan. 4, 2011); *Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1254, 1360 (S.D. Ga. 2008). Others have refused to apply the analysis at the preliminary stage of FLSA certification. *See, e.g.*, *Scovil v. FedEx Ground Package System, Inc.*, 811 F.Supp.2d 516, 518-19 (D. Me. 2011) ("Many courts considering conditional certification under the FLSA have not applied the economic realities factors in determining whether proposed class members are similarly situated. But other courts have used the factors to determine whether proposed class members are similarly situated under the FLSA." (citing cases)); *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Defendants also urge the Court to look to the 'economic realities' of the working relationship—not merely characterization as an independent contractor or employee—and find that there is not enough similarity among the putative class members…. Making a determination, at this time, of whether the satellite installation technicians were independent contractors or

14

employees pursuant to the 'economic realities' test, would also improperly delve into the merits of Plaintiffs' claim."); *Meseck v. TAK Communications, Inc.*, No. 10–965 (JRT/AJB), 2011 WL 1190579, at *6 (D. Minn. March 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries[, such as the economic realities test,] should not prevent conditional certification at the notice stage and are more appropriately addressed through a decertification motion."); *Westfall v. Kendle Intern'l, CPU, LLC*, 1:05-cv-00118, 2007 WL 486606, at *9 (W.D. W.Va. Feb. 15, 2007); *Lemus v. Burnham Painting and Drywall Corp.*, No. 2:06-cv-01158-RCJ-PAL, 2007 WL 1875539, at *5 (D. Nev. June 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for the purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification. Even if the test applies, however, Plaintiffs have presented sufficient evidence that they are similarly situated under the five factors within the respective positions of Crane Operator and Roughneck/Rigger. Specifically, Plaintiffs have put forth evidence, albeit minimal, that they are: similarly situated to other members of each position in terms of their relationship to Defendant, the skill required to perform their positions, the extent of their investments and Defendant's investments, and the degree to which their opportunity for profit and loss is determined by the alleged employer.

### D. Those Individuals Want to Opt In to the Lawsuit

Many courts have determined that plaintiffs do not need to present evidence that potential opt-in plaintiffs desire to opt-in. *Jesiek*, 275 F.R.D. at 247 ("Plaintiff's failure to provide evidence that potential opt-in plaintiffs' desire to opt-in is not fatal to their motion."); *Villarreal v. St. Luke's Episcopal Hospital*, 751 F.Supp.2d 902, 915 (S.D. Tex. 2010) ("The court agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit."). Other courts require a showing of at least a few individuals want to join. *Simmons v. T-Mobile*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) ("The Court concludes that a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit. Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice of a conditionally certified class of claimants in a collective action."). If such a requirement does exist, Plaintiffs have amply met it. The litigation has already attracted numerous new Plaintiffs. *McKnight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 805 (S.D. Tex. 2010) ("This litigation has already attracted six plaintiffs. The plaintiffs have produced sufficient evidence to show that other aggrieved [employees] … would want to join the collective action."); *Prater*, 2007 WL 4146714, at *8. Additionally, Plaintiffs explain in their affidavits that other individuals would likely seek to opt in. Plaintiffs have made a showing that other potential Plaintiffs desire to opt-in.

### E. Conditional Class Certification

This Court "has the power to modify an FLSA collective action definition on its own." *Dreyer*, 2008 WL 5204149, at *3 (citing *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005)). *See also Green v. Plantation of La., LLC*, No. 2:10-

0364, 2010 WL 5256354, at *10 (W.D. La. Nov. 24, 2010) ("As in the class-action context, this court has the power to modify an FLSA collective action definition on its own."); *Kaluom v. Stolt Offshore*, 373 F.Supp.2d 866, 873-74 (S.D. Tex. Feb. 7, 2007) ("[W]hile the Court agrees that Plaintiff's proposed class may currently be too broad, it does not agree that this overbreadth defeats Plaintiff's Motion for Notice. Rather, the just result is to allow notice, but to limit discovery and notice to only those workers who are similarly situated."). As Plaintiffs meet the requirements of the *Lusardi* analysis, the Court concludes that it appropriate to conditionally certify two separate classes, one of Crane Operators and the other of Roughneck/Riggers. *See, e.g., Matthews v. ALC Partner, Inc.*, No. 2:08-CV-10636, 2009 WL 2591497, at *5 (E.D. Mich. Aug. 24, 2009) ("Within the groups of Managers, Assistant Managers, and Technicians, the plaintiffs' accounts of their job duties, although admittedly somewhat generalized, are almost identical. Accordingly, the Court is satisfied that differences in the plaintiffs' job descriptions can be addressed by certification of three different classes, broken down generally along these lines."); *Prater*, 2007 WL 4146714, at *8 (granting motion for notice as to two subclasses of employees: leasing agents paid on an hourly basis, and other apartment office employees paid on a salary basis). A three-year notice period is appropriate, as "[t]he well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness prior to discovery." *Albanil*, 2008 WL 4937565, at *8 (citing *Lopez v. Sam Kane Beef Processors, Inc.*, No. CC-07-335, 2008 WL 565115, at *2 (S.D. Tex. Feb. 29, 2008); *Foraker v. Highpoint Southwest Services, L.P.*, No. H-06-1856, 2006 WL 2585047, at *5 (S.D. Tex.

Sept. 7, 2006); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F.Supp.2d 807, 811 (S.D. Tex. 2003)).

The Court finds, however, that Defendant's policy changed on January 12, 2012. The "policy change demonstrates that those employed by Defendant [after January 12, 2012] are not 'similarly situated' to those employed before that time, as they are not together 'victims of a single decision, policy, or plan,' regardless of whether FLSA violations continued to occur after that time." *Tolentino*, 716 F.Supp.2d at 654-55. Thus, the class period must end on that date. The Court also agrees with Defendant that the class should be limited to potential Plaintiffs who were classified as independent contractors; otherwise, the potential Plaintiffs would not all be subject to the same policy or practice.

The Court further agrees with Defendant that Plaintiffs' request for data about potential class members is too broad. The Court requires Defendant to produce, in usable electronic format, within seven days of the date of the Order: the names, last known personal and work addresses, personal and work email addresses, and dates of work of all persons who performed work for Defendant as Crane Operators or Roughneck/Riggers at any time between May 7, 2009 and January 12, 2012. The information should be verified as complete and accurate by one of Defendant's corporate representatives. Finally, the Court orders the parties to confer about the content of the notice, and to provide the Court with a proposed notice within 14 days of the date of this Order. Additionally, the parties should confer about the proper method for distribution and return of the notices. If the parties cannot agree upon either of these issues, they must each file their proposed notice and proposed method of distribution and return.

### IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part. The Court conditionally certifies the following two classes:

- All current and former Crane Operators who were classified as independent contractors, were not paid overtime pay at the rate of one and one-half times their regular hourly rate, and were employed by Defendant at any time between May 7, 2009 and January 12, 2012.

- All current and former Roughneck/Riggers who were classified as independent contractors, were not paid overtime pay at the rate of one and one-half times their regular hourly rate, and were employed by Defendant at any time between May 7, 2009 and January 12, 2012.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 7th of May, 2012.

_____

**KEITH P. ELLISON**
**US DISTRICT COURT JUGDE**